Case 2:21-cv-00165   Document 3   Filed on 06/07/22 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
June 09, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|    Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:18-1336-2 |
| | § | CIVIL NO. 2:21-165 |
| VICTORIA MARTINEZ, | § | |
|    Defendant/Movant. | § | |

## MEMORANDUM OPINION & ORDER

Defendant/Movant Victoria Martinez has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 405. Now pending is the United States of America's (the "Government") Motion for Summary Judgment (D.E. 419), to which Movant has responded (D.E. 426).

**I. BACKGROUND**

On November 28, 2018, a grand jury indicted Movant and her boyfriend, James Roye Bryan Townzen (J. Townzen), along with Michael Llamas (M. Llamas), Benjamin Llamas (B. Llamas), Charles Warren Callis (Callis), Raymond Reyes (Reyes), John Perez (Perez), Raymond Shane Townzen (S. Townzen), and Joe McNabb (McNabb) with conspiracy to possess with intent to distribute a synthetic cannabinoid mixture and substance (5F-MDMB-PINACA) from on or about October 1, 2017, through October 2, 2018, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) (Count One). Movant was also indicted for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C.§ 924(c)(1)(A)(i) (Count Two).

On April 16, 2019, Movant pled guilty to both counts without a plea agreement. She signed a sworn Stipulation (D.E. 147) that the following facts were true and correct:

- Movant joined in an agreement with two or more people to knowingly and intentionally possess with intent to distribute a synthetic cannabinoid

containing 5F-MDMB-PINACA, knowing the unlawful purpose of that agreement and with intent to further those purposes.

- Movant knowingly possessed a firearm in furtherance of the drug trafficking conspiracy.

- In January 2018, Customs and Border Protection (CBP) contacted Homeland Security Investigation (HSI) in Corpus Christi, Texas, regarding a package intercepted from Hong Kong containing one kilogram of 5F-MBMD-PINACA, a Schedule I controlled substance, which was enroute to an address in Corpus Christi. HSI investigated and determined Movant and her co-defendants were involved in a synthetic cannabinoid drug trafficking conspiracy operating, in part, out of the Done Right AC Company.

- In late 2017, J. Townzen was ordering synthetic cannabinoid chemicals overseas and manufacturing a final product of smokeable synthetic cannabinoid in a back room at the Done Right AC Company, which his uncle, Callis, operated. Perez, M. Llamas, and S. Townzen would distribute the final product.

- Movant took over the manufacturing of the final product in April of 2018, when J. Townzen was arrested on a probation violation and incarcerated in state prison. J. Townzen gave instructions to Movant, Callis, and M. Llamas from state prison through phone calls and letters.

- Movant ordered several packages of 500 grams of the chemicals from overseas and obtained the other ingredients to manufacture the final product at Done Right AC Company.

- Movant supplied the final product to M. Llamas, and he and B. Llamas would sell the drugs out of their apartment and through Facebook accounts.

- HSI agents executed search warrants on the residences of Movant and M. Llamas on August 9, 2018. In the Llamas residence, agents discovered a lab for manufacturing synthetic cannabinoid, two handguns, and approximately 600 grams of finished synthetic cannabinoid. Agents recovered 130 grams of 5F-MDMB-PINACA chemical, a handgun, and approximately $30,000 cash in Movant's residence.

- Agents obtained search warrants for Facebook and email accounts, as well as electronic devices. Agents determined that the Llamas, S. Townzen, Perez, and McNabb utilized their Facebook profiles to advertise and sell synthetic cannabinoids.

- Agents determined that Movant manufactured the narcotics at Callis' business through July of 2018 and paid him rent with drug proceeds. Callis accepted

>the cash and wrote Movant company checks to help conceal the true source of the funds. On at least one occasion, Callis accepted payment in the form of 5 kilograms of synthetic cannabinoids in lieu of cash.

The Presentence Report (PSR, D.E. 184) calculated Movant's base offense level at 36 and added a two-level enhancement under U.S.S.G. §§ 2D1.1(b)(7) for distributing a controlled substance through mass-marketing by means of an interactive computer service, based on the use of Facebook accounts to advertise and sell the synthetic cannabinoid, and a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, based on renting the room at the Done Right AC Company to use for manufacturing the drugs. After credit for acceptance of responsibility, Movant's total offense level was 37. With a criminal history category of III, her Guidelines range was calculated to be 240 months, the statutory maximum sentence.

Movant's counsel filed written objections to the PSR regarding both enhancements and Movant's criminal history score. Following a two-part contested sentence hearing, the relevant parts of which will be discussed *infra*, the Court overruled Movant's objections to both sentencing enhancements and determined that the base offense level should be 34 rather than 36. The resulting Guidelines range was 210 to 240 months' imprisonment. The Court sentenced Movant to 160 months' imprisonment on Count One—a downward variance due to finding Movant's criminal history was "slightly over-represented"—and 60 months on Count Two, to be served consecutively and to be followed by 3 years' supervised release on each count, to be served concurrently.

On appeal, Movant challenged the Court's application of sentencing enhancements for distributing a controlled substance through mass-marketing by means of an interactive computer service and for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. The Fifth Circuit Court of Appeals affirmed her conviction and sentence on

3

September 30, 2020, holding that the Court did not commit clear error in applying either enhancement. *United States v. Martinez*, 823 F. App'x 284 (5th Cir. 2020).

Movant did not petition the Supreme Court for a writ of certiorari, and her conviction became final on December 29, 2020. *See* FED. R. APP. P. 4(b)(1)(A)(i). She filed the current motion under 28 U.S.C. § 2255 on August 3, 2021. It is timely.

## II. MOVANT'S ALLEGATIONS AND GOVERNMENT'S RESPONSE

Movant's § 2255 motion alleges that trial counsel was constitutionally ineffective in the following ways:

1. Counsel was a state lawyer and did not know how to defend Movant in federal court;

2. Counsel never met with Movant in person to review discovery or discuss her case;

3. Counsel (a) failed to file a motion to suppress or interview witnesses, and (b) he convinced Movant to plead guilty without a written plea agreement;

4. Counsel failed to procure evidence that Defendant was not guilty of Count Two or to secure safety valve;

5. Counsel failed to argue that Movant qualified for a sentence reduction for minor role.

The Government responds that Movant's claims are all either contradicted by the record, insufficiently pled, procedurally defaulted, or without merit. Her § 2255 motion is also unsworn and has no attestation that her claims and statements are made under penalty of perjury. Finally, the motion contains claims contradict the premise that Movant has accepted responsibility for her criminal conduct.

## III. LEGAL STANDARDS

### A. 18 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's

jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. Regarding the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *Armstead v. Scott*, 37

5

F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter*, 131 F.3d at 463.

Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364–65, (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970), and citing *Strickland*, 466 U.S. at 686). *Strickland's* two-part analysis applies to claims of ineffective assistance of counsel in this context. *E.g.*, *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). During this stage of a proceeding, the Supreme Court has reiterated that counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.' " *Padilla*, 559 U.S. at 370 (citing *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). "It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly," and the "lawyer must actually and substantially assist his client in deciding whether to plead guilty." *United States. v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008) (quoting and *citing Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974)). "It is his job to provide the accused an understanding of the law in relation to the facts." *Id.* "The advice he gives need not be perfect, but it must be reasonably competent." *Id.* In this context, the prejudice prong requires the prisoner to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Hill*, 474 U.S. at 59). "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *Id.* at 209; *accord Padilla*, 559 U.S. at 372 ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

IV. ANALYSIS

    **1. Counsel was a state lawyer.**

Ground One alleges that counsel was ineffective because he was a state court lawyer with little federal experience. Movant states that, "After her sentence was handed down her Counsel stated, 'If this would have been state [court], you would have gotten probation,' but it being federal he could not help her." D.E. 405, p. 3. According to Movant, counsel was plainly admitting that "he did not know how to defend her right in federal" court. *Id.* As a result, Movant was "unknowing and unvoluntary in her plea." *Id.*

Movant's claim that her trial counsel, attorney Scott Ellison, is inexperienced in federal court is incorrect. Mr. Ellison is on the Court's list of attorneys eligible for appointment under the Criminal Justice Act, and a search of the Court's CM/ECF system lists him as an attorney in 480 cases throughout the Southern District of Texas, dating back to 2000. Movant's conclusion that counsel's alleged statement was an admission that he wasn't qualified to represent her in federal court is equally flawed. As the Government points out, if counsel did make such a statement, he would simply have been informing Movant that there are differences in state and federal sentencing procedures and criminal statutes.

Accordingly, Movant's claim in Ground One is denied.

    **2. Counsel never met with Movant in person.**

Ground Two alleges that counsel was ineffective because he never met with Movant in person "even once to go over any discovery, thoughts, her wishes on how she wished to be defended, investigations, witnesses, [or] evidence that she had to prove the charges and statements by the government were false." D.E. 405, p. 5. These conclusory allegations lack any

7

factual support and contradict Movant's sworn testimony that she was satisfied with counsel's representation.

At the rearraignment hearing, the Court specifically addressed Movant and her co-defendants about their satisfaction with representation of counsel:

> THE COURT: I want to use that question to explain to the rest of you that I had a previous hearing on another case and some of the defendants wanted new lawyers. They had written me letters complaining about their lawyers, personality conflicts, whatever the case may be. Don't tell me right now that you are satisfied with your lawyer and then write me a letter tomorrow complaining about it. Let's get this out in the open right now. It may be embarrassing to everyone, but if you are having trouble with your lawyer, now is the time to do it because I'm not going to pay much attention to it if you tell me later. It's a general question, but there's a reason we ask it. We will try to resolve any disagreements you may be having with your lawyer. But if you want another lawyer, you better ask for it today.

4/16/2019 Rearraignment Hrg. Tr., D.E. 320 at 13:14–14:2.

The Court specifically asked Movant whether she was satisfied with counsel's representation, and she responded, "Yes, sir." *Id.* at 14:22-24.

Movant's sworn statement in open court that she was satisfied with counsel's representation is entitled to a strong presumption of truthfulness. *See United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (statements made under oath in open court "carry a strong presumption of verity" and create a "formidable barrier" in subsequent proceedings)).

Accordingly, Movant's claim in Ground Two is denied.

**3a. Counsel failed to file a motion to suppress or interview witnesses.**

Ground Three alleges that trial counsel was ineffective because he filed "zero motions [] to suppress any so-called evidence or to attempt to gain an investigator for his client nor interview one single witness that could have given eye witness testimony to the firearm being

8

inside [the] closet of [Movant's] boyfriend's uncle's home in which her boyfriend and [Movant] moved . . . ." D.E. 405, p. 7.

"A voluntary and unconditional guilty plea has the effect of waiving all nonjurisdictional defects in the prior proceedings." *United States v. Wise*, 179 F.3d 184, 186 (5th Cir. 1999) (citing *McMann v. Richardson*, 397 U.S. 759, 766 (1970); *Busby v. Holman*, 356 F.2d 75, 77 & n. 3 (5th Cir. 1966) (collecting cases)). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991) (citation omitted). "This includes all [ineffective assistance of counsel] claims 'except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.'" *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019) (quoting *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000)). When Movant pled guilty, she waived her right to now claim that counsel was ineffective for failing to hire an investigator, interview witnesses, or file a motion to suppress evidence of the firearm.

Moreover, the Fifth Circuit "ha[s] explained that 'complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.'" *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014) (quoting *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001)). To prevail on such a claim, "'the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.'" *Id.* (quoting *Day v. Quartermain*, 566 F.3d 527, 538 (5th Cir. 2009)). Here, Movant fails to name any specific witness and does not

9

explain how testimony that the gun was inside the closet of the home where she was living would have exonerated her of possessing a firearm in connection with a drug trafficking crime. She also fails to identify what legal theory she thinks would have resulted in the Court suppressing the firearm, which was seized pursuant to a search warrant and recovered near the synthetic cannabinoids and $30,000 cash in her residence.

**3b. Counsel convinced Movant to plead guilty without a written plea agreement.**

Movant further complains that counsel failed to advise her of the elements of the offense, discuss potential defenses, or review plea bargaining negotiations before advising her to plead guilty. She states that counsel said the Government refused to offer a plea agreement and told her she would stand zero chance going to trial. Instead, counsel "took her before the Court without a signed plea agreement, even further lessening the real odds of a layperson understanding fully or 'knowingly' agreeing to terms that they can not see nor study." D.E. 405, p. 8.

Movant's claim that counsel's ineffectiveness rendered her plea unknowing and involuntary is belied by her own statements under oath at rearraignment. Movant testified that she received a copy of the indictment, had read it, had discussed it with counsel, and understood the charges against her. The Court also thoroughly addressed the elements of each offense and the sentencing procedure with Movant, including the penalty range and maximum punishment for each offense. Movant acknowledged that she had discussed the sentencing guidelines with counsel and assured the Court she understood the sentencing process and had no questions. Movant also testified that she read, discussed with counsel, and voluntarily signed a 7-page stipulation setting forth the factual basis for her guilty plea. She attested that she "thoroughly reviewed, underst[ood], and declare[d] that the information in th[e] Stipulation of Fact [was] true and correct, subject to penalty of perjury." D.E. 147, p. 7. Counsel for the Government read the

stipulation into the record, and Movant agreed that "everything that was said about [her] involvement in the conspiracy" was "correct." Rearraignment Tr. at 37:5-12.

As set forth *supra*, Movant's sworn statements in open court are entitled to a strong presumption of truthfulness. *See Lampaziane*, 251 F.3d at 524. Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002). Her signed, unambiguous stipulation is also accorded great evidentiary weight in deciding if her plea was entered voluntarily. *See Bonvillan v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986). The evidence before the Court supports the finding that counsel was not ineffective and that Movant's guilty plea was knowing and voluntary.

Accordingly, Movant's claims in Ground 3 are denied.

**4. Counsel failed to procure evidence that Movant was not guilty of Count Two or to secure safety valve.**

Ground Four alleges that counsel was ineffective because he failed to show that Movant was not guilty of possessing a firearm in furtherance of a drug trafficking crime. Movant maintains the Government never produced any evidence that she was the owner of the firearm in Count Two, and had counsel interviewed eyewitnesses, he would have known the weapon belonged to codefendant Callis or to one of Callis' "many in and out girlfriends" who had been living in Callis' house before he moved out and Movant and J. Townzen moved in. Because of counsel's ineffectiveness, Movant received a consecutive sentence of 60 months on Count Two and was ineligible for safety valve under U.S.S.G. § 5C1.2(a)(2).

As the Court explained at rearraignment, to convict Movant on Count Two, the Government was required to show that Movant committed a drug trafficking offense and that she knowingly possessed a firearm in furtherance of her commission of that crime. The Government

11

was not required to prove that Movant was the *owner* of the firearm, only that she knowingly *possessed* it. Despite Movant's current claim that she had never even seen the firearm in question, her signed and sworn stipulation admitted that she knowingly possessed a firearm and that the firearm, a loaded 9mm pistol, was found near the 5F-MDMB-PINACA and $30,000 cash when a search warrant of her residence was executed. D.E. 147, pp. 2, 4-5. Her signed stipulation and sworn statements in open court that she possessed the firearm in furtherance of the drug trafficking conspiracy preclude her current claims of innocence.

Finally, in response to the Government's motion for summary judgment, Movant argues that she was "double sentenced" because, in addition to receiving a 60-month stacked sentence on Count Two, her offense level on Count One was enhanced by two levels for the firearm. As detailed in the PSR, Movant received enhancements for distributing a controlled substance through mass-marketing by means of an interactive computer device and for maintaining a premises for the purpose of manufacturing or distributing a controlled substance; however, she did not receive a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon. Failing to qualify for a two-level adjustment under the statutory safety valve because she possessed a firearm is not the same thing as receiving an enhanced sentence.

Accordingly, Movant's claim in Ground Four is denied.

### 5. Counsel failed to argue that Movant qualified for minor role.

Ground Five alleges that counsel was ineffective because he failed to argue that Movant was entitled to a two-level reduction under U.S.S.G. § 3B1.2 for minor role. Movant complains that counsel should have shown the Court that she was a minor participant who only agreed to help her boyfriend on a few occasions by making deliveries when he was incarcerated and that she should not have been held accountable for drug sales made by anyone else. Counsel also

should have argued that Movant's cooperation was indicative of a reduced likelihood of recidivism.

The record in this case, based on extensive evidence including jail calls, surveillance, search warrants, and Movant's own sworn testimony and statements, established that she was anything but a minor participant. To the contrary, she was "at the top" of the conspiracy. She used drug money to rent a room from Callis for the purpose of manufacturing drugs and testified under oath that she manufactured ten to twenty 500-gram bags of synthetic cannabinoid approximately three times a week for four months. She gave all the drugs to another coconspirator for distribution and also made known on Facebook that she had "bags" available to sell.

Counsel nonetheless argued at sentencing that Movant was a young woman who had a young child, and she "ends up getting a boyfriend, the wrong boyfriend," who "took advantage of her. He influenced her." 12/17/2019 Sent. Tr., D.E. 323 at 24:18-19, 27:5-6. "She followed the instructions of her boyfriend. She wasn't really much in control of anything." *Id.* at 10:18-20. Thus, the record shows that counsel made exactly the arguments Movant states in her § 2255 motion that she wanted made. The Court explained that it "agree[d] with a lot of it, that she was a very typical young mother like her that hooked up with the wrong guy and got wrongfully influenced. Nevertheless, she committed a very serious drug crime." *Id.* at 39:16-19.

Counsel also argued at length that Movant was entitled to a reduced sentence for substantial assistance under U.S.S.G. § 5K1.1 or a downward variance based on her cooperation in this case. She had approximately five "extensive debriefings about all of the defendants in this case" and "got on the stand and testified. She testified truthfully. She helped the government." Sent. Tr. at 21:10-11; 24: 7-8. In explaining why the Government declined to file a motion under

13

§ 5K1.1, the AUSA stated, "I don't believe a word that Ms. Martinez testified to. I believe she intentionally did it to try to help herself and help her friends . . . ." At 20:11-13. The Court agreed that Movant did not qualify for substantial assistance under § 5K1.1 but did "give her consideration for [] the way she attempted earlier to provide information." *Id.* at 38:25 – 39:1.

Accordingly, Movant's claims in Ground Five are denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to

proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of her claims. That is, reasonable jurists could not debate the Court's resolution of her claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment (D.E. 419) is **GRANTED**; Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 405) is **DENIED**; and Movant is **DENIED** a Certificate of Appealability.

It is so **ORDERED** this 7th day of June, 2022.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE